**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **SEDRIC DESHAWN KING,** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **Cause No. EP-25-CV-283-LS** |
| | § | |
| **CHARISMA EDGE, Warden,** | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Sedric Deshawn King, federal prisoner number 69656-510, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is dismissed for failure to exhaust his administrative remedies.

## BACKGROUND

King is a 51-year-old federal prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 69656-510, last visited Mar. 31, 2026). His projected release date is April 17, 2031. *Id*.

King was arrested on July 21, 2023, after he was indicted for conspiracy to distribute and possess with intent to distribute methamphetamine (Count One) and distribution and possession with intent to distribute methamphetamine (Count Three). *See United States v. King*, 5:23-cr-70-H-2 (N.D. Tex.), Indictment, ECF No. 1. He pleaded guilty to Count Three pursuant to the terms of a plea agreement. *Id*., Plea Agreement, ECF No. 158. He was sentenced on February 1, 2024, to 120 months' imprisonment followed by three years' supervised release. *Id.*, J. Crim. Case, ECF No. 281.

In his § 2241 petition, King challenges the failure by the Bureau of Prisons (BOP) to award

him First Step Act Earned Time Credits (FTCs) for the time he was in federal custody between July 21, 2023 (the day he was arrested), and February 15, 2024 (the day he arrived at his designated BOP facility). Pet'r's Pet., ECF No.1 at 1–2. He also asks the Court to intervene on his behalf and order the Respondent Charisma Edge to award him all the "good time, First Step Act, and Second Chance Act credits" that he is due. *Id.* at 5.

## STANDARD OF REVIEW

A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

King does not claim that he exhausted his administrative remedies with the BOP or that any exception to the exhaustion requirement applies. *See* Pet'r's Pet., ECF No. 1 at 4. Instead, he argues that exhaustion is not required "[b]ecause habeas corpus under [28] U.S.C. § 2241 is a Constitutional right, … there can be [no] rule … which would abrogate [it] such as regarding exhaustion of administrative remedies." Pet'r's Pet., ECF No. 1 at 4.

King is wrong. His argument overlooks the important role that exhaustion plays in the early resolution of disputes.

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise,

and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37–38 (1972) (citations omitted); *see also Chavez v. Bragg*, EP-09-cv-6-KC, 2009 WL 506549, at *1 (W.D. Tex. Jan. 21, 2009) (noting that "[e]xhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and that "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted"; further noting that exhaustion "may produce a useful record for subsequent judicial consideration") (internal citations and quotations marks omitted).

Moreover, the Fifth Circuit has long held that the BOP should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

Consequently, King "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the agency with custody over him. *Cf.*

*Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances.

The Court finds that King has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *See id.* (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if King had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Good Time Credits (GTCs)**

King asks the Court to order Edge to provide him with all the Good Time Credits (GTCs) he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5. King claims that he is entitled to GCTs for the period July 21, 2023 (the date of his arrest) until February 15, 2024 (the date of his arrival at his designated BOP facility). *Id.* at 1. King is wrong.

A federal prisoner must be *serving* his term of imprisonment to earn GCTs. *See* 18 U.S.C. § 3624(b)(1) ("[A] prisoner who is serving a term of imprisonment … may receive credit toward

the service of the prisoner's sentence …"). A federal prisoner does not begin serving his sentence until he has been convicted, sentenced, and received into custody awaiting transportation to the official detention facility at which his sentence is to be served—or when he arrives voluntarily at the facility to begin serving his sentence. *See* 18 U.S.C. § 3585(a).

King was given jail credit—but not GTCs—for his time in custody from the date of his arrest on July 21, 2023, through the day before his sentencing on February 1, 2024. Gov't's Resp., Ex. A (Decl. of Lolita Dorsett), ECF No. 3-2 at 3. That equates to a total of 195 days of credit toward his sentence for his presentencing custody.

King, like any federal prisoner, may earn up to 54 days of GTCs for each year of serving his sentence. 18 U.S.C. § 3624(b)(1). If he does not lose any GCTs for disciplinary infractions, he will earn 540 days of GCTs before he completes his ten-year sentence. Gov't's Resp., Attach. 2 (Public Information Inmate Data), ECF No. 3-4 at 4.

King has not shown that the BOP has failed to accurately calculate his GTCs.

**C. First Step Act (FSA) Earned Time Credits (FTCs)**

King also asks the Court to order Edge to provide him with all the FTCs that he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5. King argues that he accrued FTCs between his arrest on July 21, 2023, and his arrival at his designated BOP facility on February 15, 2024. Pet'r's Pet., ECF No. 1 at 4. King is mistaken.

The FSA allows an eligible prisoner to earn time credits toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). To determine eligibility, the FSA requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id*. § 3632(a)(1). The risk and needs assessments are

made up of two components: the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score and the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13). Resp't's Resp., Ex. A, (Decl. of Lolita Dorsett), ECF No. 3-2 at 3–4. The PATTERN score is designed to: (1) determine a prisoner's recidivism risk; (2) assess a prisoner's risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce a prisoner's risk of reoffending; (4) regularly assess a prisoner's recidivism risk and programming needs; and (5) determine when a prisoner is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). SPARC-13 is used to examine the prisoner in areas which can be targeted to reduce his risk of recidivating. Based on the results of SPARC-13, the BOP staff will recommend evidence-based recidivism reduction (EBRR) programs and productive activities (PAs) for a prisoner consistent with his needs.

The FSA also creates incentives to encourage prisoners to participate in EBRR programs and PAs. 18 U.S.C. § 3632(d). It gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Additionally, per § 3632(d)(4)(B), "[a] prisoner may *not* earn time credits … for an

6

evidence-based recidivism reduction program that the prisoner successfully completed … during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B) (emphasis added). As the Court has already noted, "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *Id.* § 3585(a).

Here, King was not sentenced until February 1, 2024, and he is clearly prohibited by statute from earning FTCs prior to that date. *Id.* § 3632(d)(4)(B)(ii). He was scored as medium risk upon his arrival at his designated BOP institution on February 15, 2024. Resp't's Resp., Ex. A, (Decl. of Lolita Dorsett), ECF No. 3-2 at 5. At that time, he began earning ten days of FTCs for every 30 days of successful participation. After his second consecutive minimum risk assessment, he began earing an additional five days of FTCs. As of September 7, 2025, King had accrued 570 program days, which equated to a total of 195 FTCs. With the application of these FTCs, King's release date was changed from January 27, 2032, with GTCs, to July 16, 2031, with FTCs. If King's status remains the same throughout his remaining time in BOP custody, he is projected to be released via the FSA on January 27, 2031. If King's FSA status remains the same throughout his time in BOP custody, he is expected to accrue 540 FSA time credits toward his placement into prerelease custody. This will allow him to be placed in prerelease custody on August 5, 2029, without consideration of possible additional days under the Second Chance Act.

Several district courts in the Fifth Circuit have denied habeas petitions where an inmate sought FTCs for the period between sentencing and their arrival at their designated BOP facility. *See Hogan v. Hijar*, EP-24-cv-360-DB (W.D. Tex. April 4, 2025), Order Granting Respondent's

Motion for Summary Judgment and Denying Petitioner's Petition (unpublished), ECF No. 14 at 4-6 (denying petition where inmate sought credits from the date of sentencing until his arrival at his designated BOP facility 305 calendar days later; noting that "[t]here are several practical reasons for denying a prisoner FTCs before he enters BOP custody," including, among others, "because the prisoner has not completed the risk and needs assessment, BOP staff members cannot make a recommendation concerning his participation in an EBRR program or PA"); *Stinson v. Martinez*, No. 2:23-cv-0751, 2024 WL 4969169, at *3-8 (W.D. La. Nov. 12, 2024) (Magis. Ct.) (explaining that "[b]ecause Petitioner did not undergo a risk and needs assessment until he arrived at his designated BOP facility, it follows that he could not have 'successfully participated' in any recommended programming before that time"; recognizing that "[t]o allow an inmate to earn time credits outside of the system established by the FSA would essentially void large portions of the FSA and render them meaningless") (citations omitted), *R. & R. adopted* by 2024 WL 4965618 (W.D. La. Dec. 3, 2024), *cert. denied before judgment*, 145 S. Ct. 1345 (2025), *and appeal dismissed as moot*, No. 24-30793, 2025 WL 2017872 (5th Cir. July 18, 2025); *Feliz v. Martinez*, Docket No. 2:24-cv-0701, 2024 WL 4901948, at *2 (W.D. La. Oct. 31, 2024) (Magis. Ct.) ("Because Petitioner did not undergo a risk and needs assessment until he arrived at his designated BOP facility, it follows that he could not have 'successfully participated' in any recommended programming before that time."), *R. & R. adopted by* 2024 WL 4898079 (W.D. La. Nov. 26, 2024).

At least one district court in the Fifth Circuit has reached a different conclusion. *See Baker v. Rosalez*, 1:24-cv-1362-RP, 2025 WL 2299373, at *1-2 (W.D. Tex. Aug. 8, 2025) (adopting R. & R. that "found, like numerous other courts, that inmates become eligible to earn time credits under the [FSA] beginning on their sentencing date …," and ordering that respondent recalculate

petitioner's FSA time credits to include time spent in custody awaiting transfer to his designated BOP facility) (citation omitted).

Relying on the language in 18 U.S.C. § 3632(d)(4)(B) and 18 U.S.C. §3585(a), this Court finds that King was not entitled to accumulate FTCs before his arrival at his designated facility on February 15, 2024. Moreover, this Court observes that King has not provided evidence that he participated in and successfully completed EBRR programs or PAs before he first arrived. Instead, he has relied on conclusory and unsupported claims that he "was engaged in productive activity." *See* Pet'r's Pet., ECF No. 1 at 1; His "conclusory allegations alone are insufficient for federal habeas relief [because he] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims." *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("conclusory allegations do not raise a constitutional issue in a habeas proceeding").

King has not shown that the BOP has improperly deprived him of any FTCs or violated his constitutional rights. 28 U.S.C. § 2241(c).

**D. Second Chance Act (SCA) Placement**

King finally asks the Court to order Edge to provide him with all the "Second Chance Act Credits" that he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5.

The Second Chance Act (SCA) provides a prisoner reentering society after incarceration with resources for post-imprisonment rehabilitation services, with the goal of reducing recidivism and enhancing public safety. Pub. L. No. 110-199, 122 Stat. 657. It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed

to rehabilitate a prisoner and reduce recidivism. *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It also addresses a prisoner's placement in pre-release custody in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c)(1), (2). But it does not create SCA "credits." Intead, it grants the BOP Director the *discretion* to place a prisoner in a community corrections facility for up to twelve months. *Id*. § 3624(c)(1); *Jones v. Bergami*, No. EP-19-cv-254-DB, 2019 WL 4889735, at \*3 (W.D. Tex. Oct. 2, 2019). It "makes no mention of federal courts and does not grant any authority to the federal courts" to order a prisoner's placement in pre-release custody. *United States v. Calderon*, 801 F. App'x 730, 732 (11th Cir. 2020).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any place, including a community corrections facility. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate an inmate's place of confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house

10

federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

Thus, to the extent that King requests that the Court order his placement in a residential facility, the Court has no authority under the SCA to grant the relief he seeks.

## CONCLUSION AND ORDERS

The Court concludes that King has failed to exhaust his administrative remedies. The Court accordingly enters the following orders:

**IT IS ORDERED** that Sedric Deshawn King's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) and his civil cause are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this 10th day of April 2026.

_____
**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**

11